IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RAINER F. HUCK, an individual, and JOHN ANDERSON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; BUREAU OF LAND MANAGEMENT; WILLIAM PERRY PENDLEY in his official capacity as Deputy Director of Policy and Programs; and MICHAEL D. NEDD in his official capacity as Deputy Director of Operations,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION<br><br><br>Case No. 2:21-cv-11-TC |

Pro se plaintiffs Rainer Huck and John Anderson want to use motor vehicles to travel on federal public lands (many of which are federally-designated wilderness areas) that Congress and the Bureau of Land Management (BLM) have closed to motorized vehicle access. They say their age-related physical ailments and their physical disabilities prevent them from visiting those scenic and recreational areas without a motor vehicle, and that the bar violates their constitutional rights under the U.S. Constitution's Establishment, Due Process, and Equal Protection Clauses.

1

To achieve their goal, Plaintiffs essentially ask this court to open up what they contend are historical roadways under R.S. 2477. Because this court does not have authority to grant that remedy here, the court cannot redress Mr. Huck's and Mr. Anderson's injury. Consequently, they do not have standing and the court must dismiss the case for lack of subject matter jurisdiction.

**Procedural Background**

Plaintiffs' Complaint asserts six causes of action. Four of the claims (Claims Three through Six) concern BLM's regulatory obligations in connection with the John D. Dingell, Jr. Conservation, Management, and Recreation Act ("Dingell Act"), Pub. L. No. 16-9, 133 Stat. 580 (2019), and R.S. 2477 roadways. In July 2021, the court granted Defendants' Motion to Dismiss those claims for lack of subject matter jurisdiction (see ECF No. 7) because Plaintiffs lacked standing, their claims were not ripe for review, and the United States had not waived its sovereign immunity. (See July 28, 2021 Order, ECF No. 21.)

In their remaining claims (Claims One and Two), Plaintiffs contend Defendants have violated Plaintiffs' constitutional rights. Claim One asserts that Congress and the BLM violated the Establishment Clause of the First Amendment by improperly designating and managing certain lands as wilderness areas (closed to motorized vehicles) "in support of Earth-religions and their tenets regarding the 'sacredness' of public lands." (Compl. ¶¶ 50, 53, ECF No. 1.) In Claim Two, Plaintiffs allege Defendants violated their equal protection and due process rights as disabled individuals when the Dingell Act established new recreation and wilderness areas and BLM barred motorized access to those and other federal lands.

Initially, in the 2021 Motion to Dismiss, Defendants asked the court to dismiss Claims One and Two as well for lack of subject matter jurisdiction. But before the court ruled on the

motion, they withdrew their request for dismissal of those claims, and the court did not look beyond Claims Three through Six.  (See July 28, 2021 Order at 2.)

The Defendants have since filed a Motion for Judgment on the Pleadings asking the court to dismiss Claims One and Two for multiple reasons.  (See ECF No. 39.)  In their Reply, they re-assert their original position that the court lacks subject matter jurisdiction over those claims.  (See Defs.' Reply at 2, ECF No. 56.)  Upon further review of the first two causes of action and the remedy Plaintiffs seek, the court agrees that it lacks subject matter jurisdiction to address the merits of Plaintiffs' remaining claims.

**Subject Matter Jurisdiction**

Article III of the United States Constitution limits federal courts' subject matter jurisdiction to cases and controversies.  The court must confirm that it has subject matter jurisdiction before addressing the merits of the case, a responsibility that continues throughout the litigation.  Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006).  See also, e.g., Gad v Kan. State Univ., 787 F.3d 1032, 1035 (10th Cir. 2015) (a party may not waive subject matter jurisdiction).

"To state a case or controversy under Article III, a plaintiff must establish standing." Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 133 (2011).  If a party does not do so, the court does not have power to entertain his case.  Collins v. Daniels, 916 F.3d 1302, 1314 (10th Cir. 2019); O'Connor v. Washburn Univ., 416 F.3d 1216, 1222 (10th Cir. 2005) ("Because it involves the court's power to entertain the suit, constitutional standing is a threshold issue in every case before a federal court.").  To have Article III standing, a plaintiff must have suffered a concrete and particularized "injury in fact" that is "fairly traceable" to the defendant, and he must

demonstrate a substantial likelihood that "a favorable judgment will redress the injury." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005).

For the reasons set forth below, Plaintiffs cannot satisfy the redressability requirement for their remaining claims.

**The Dingell Act and R.S. 2477**

Ultimately, Plaintiffs ask for an order allowing them (and other members of the public) to drive vehicles, such as motorcycles and off-highway vehicles (OHVs), on parts of wilderness and federal recreation areas in Utah that the BLM has closed to motorized traffic. As explained below, the legal framework governing motorized access to federal public land prevents the court from granting that relief.

In 2019, the Dingell Act established new recreation and wilderness areas on federal lands in Utah. Wilderness is defined as "an area of undeveloped federal land retaining its primeval character and influence, without permanent improvements or human habitation . . . ." 16 U.S.C. § 1131(c). Motorized vehicles are prohibited on lands that have been designated as wilderness, subject to valid existing rights. Those valid existing rights arise out a statute called R.S. 2477 and the Federal Land Policy and Management Act (FLPMA), but determining the scope of those rights is a complicated issue that has spawned much litigation.

The intersection of R.S. 2477 and FLPMA has given rise to "one of the more contentious land use issues in the West: the legal status of claims by local governments to rights of way for the construction of highways across federal lands managed by the [BLM]." Southern Utah Wilderness Alliance v. Bureau of Land Mgm't, 425 F.3d 735, 740 (10th Cir. 2005) ("SUWA v. BLM"). The Tenth Circuit has briefly described the genesis of that issue:

> In 1866, Congress passed an open-ended grant of "the right of way for the construction of highways over public lands, not reserved for public uses." Act of

4

> July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, repealed by Federal Land Policy Management Act of 1976 (FLPMA), Pub.L. No. 94–579 § 706(a), 90 Stat. 2743. This statute, commonly called "R.S. 2477," remained in effect for 110 years, and most of the transportation routes of the West were established under its authority. During that time congressional policy promoted the development of the unreserved public lands and their passage into private productive hands; R.S. 2477 rights of way were an integral part of the congressional pro-development lands policy.
>
> In 1976, however, Congress abandoned its prior approach to public lands and instituted a preference for retention of the lands in federal ownership, with an increased emphasis on conservation and preservation. See FLPMA, 43 U.S.C. § 1701 et seq. As part of that statutory sea change, Congress repealed R.S. 2477. There could be no new R.S. 2477 rights of way after 1976. But even as Congress repealed R.S. 2477, it specified that any "valid" R.S. 2477 rights of way "existing on the date of approval of this Act" (October 21, 1976) would continue in effect. Pub.L. No. 94–579 § 701(a), 90 Stat. 2743, 2786 (1976). The statute thus had the effect of "freezing" R.S. 2477 rights as they were in 1976. Sierra Club v. Hodel, 848 F.2d 1068, 1081 (10th Cir.1988), overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh, 956 F.2d 970, 971 (10th Cir.1992) (en banc).

Id. at 740–41.

A court's determination of whether a portion of federal land is a valid R.S. 2477 right-of-way (and, accordingly, available to motorists such as Mr. Huck and Mr. Anderson) is limited to actions under the Quiet Title Act (QTA), 28 U.S.C. § 2409a. Kane Cty. v. United States, 333 F.R.D. 225, 230 (D. Utah 2019). Under the QTA's waiver of sovereign immunity, the United States permits quiet title suits against the federal government concerning real property in which the United States claims an interest, including land that Congress retained under FLPMA. The QTA's narrow waiver of sovereign immunity substantially limits the court's jurisdiction over R.S. 2477 issues, because the QTA is "the exclusive means by which adverse claimants [can] challenge the United States' title to real property." Block v. North Dakota, 461 U.S. 273, 286 (1983); SUWA v. BLM, 425 F.3d at 1071.

To state a cause of action under the QTA, and to establish jurisdiction, a plaintiff must allege that "(1) the United States 'claims an interest' in the property at issue; and (2) title to the

5

property is 'disputed.'" Kane Cty., Utah v. United States, 772 F.3d 1205, 1210–11 (10th Cir. 2014) (citation omitted).  If the plaintiff passes that "jurisdictional bar, [he] then must prove acceptance of the grant, typically by public use or by mechanical means prior to October 21, 1976." Kane Cty., 333 F.R.D. at 230.  A party claiming a right under R.S. 2477 must assert title and provide proof for each roadway.  If that party establishes existence of a valid right to the road under R.S. 2477, BLM may no longer enforce an order closing that road to motor vehicles.  Only then may the public have motorized access to that particular property.

Plaintiffs do not bring a claim under the QTA (nor do they assert title in any of the roads).  But the remedy they seek is exclusively available under the QTA, and that raises Article III standing issues.  In other words, can this court redress the injury Plaintiffs suffered when Defendants allegedly violated their constitutional rights?  The court concludes it cannot.

**Plaintiffs' Standing**[1]

By bringing this lawsuit, Mr. Huck and Mr. Anderson are attempting to accomplish indirectly what they may not accomplish directly.

They repeatedly state that the alleged constitutional violations have injured them because the Dingell Act wilderness designations and BLM road closures prevent their motorized access to federal land via R.S. 2477 roadways.[2]  To avoid being fined or imprisoned for traveling on the closed roads in motor vehicles, they ask the court to declare "that the subject wilderness designations are unconstitutional" and to order the BLM to "allow the public access to and

---

[1] In its standing analysis, the court assumes the Plaintiffs' claims have merit. Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc).  Additionally, because Mr. Huck and Mr. Anderson are proceeding pro se, the court construes the Complaint liberally.  Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994).

[2] E.g., Compl. p. 5 ¶ K, ¶ 37, ¶ 39, ¶ 43.

through RS 2477 roads and roadways" and refrain from "enforc[ing] any prohibitions against the public for doing so."[3] (Compl. ¶ 11.)

They assume the restricted areas contain valid R.S. 2477 roads upon which they, as members of the public, have the right to travel by motorized means. To the contrary, the question of whether those byways satisfy the R.S. 2477 criteria is not resolved. In fact, numerous government entities are currently litigating R.S. 2477 rights under the QTA.[4] More fundamentally, however, even if Plaintiffs could present evidence of R.S. 2477 status, they do not claim a property interest in the land and would not have standing to litigate those rights under the QTA.

In Kinscherff v. United States, 586 F.2d 159 (10th Cir. 1978), the Tenth Circuit addressed a quiet title action in which members of the public sought the right to use a particular road on federal land. The Kinscherff court held that in order to state a claim under the QTA, a plaintiff must assert some interest in the real property. Id. at 160 ("An attempt to remove a cloud from title presupposes that the plaintiff has some title to defend."). But members of the public (such as Mr. Huck and Mr. Anderson) do not hold such an interest, because "[m]embers of the public … do not have a 'title' in public roads." Id.

In 2004, the Tenth Circuit addressed the issue again in Southwest Four Wheel Drive Association v. Bureau of Land Management. In that case, associations representing users of OHVs filed suit to quiet title to easements located in federal wilderness study areas. The court of appeals reiterated its holding in Kinscherff and said the OHV users had no more right than the

---

[3] E.g., Compl. p. 7 ¶ Q, p. 27, ¶ 79, p. 30 ¶ G.

[4] The State of Utah and twenty-two of its counties have already filed lawsuits asserting claims to R.S. 2477 roads. See, e.g., Emery Cty. v. United States, 2:12-cv-00429-CW (D. Utah); Kane Cty. v. United States, 2:10-cv-01073-CW (D. Utah).

plaintiffs in Kinscherff to bring a QTA suit. 363 F.3d 1069, 1071 (10th Cir. 2004). The court then held that because the OHV associations could not state a claim under the QTA, the court lacked jurisdiction to resolve the case. Id.

The same problem exists here. The only difference lies in the way Plaintiffs characterize their claims. Although they do not expressly assert a claim under the Quiet Title Act, they seek a remedy only obtainable under the QTA: opening of R.S. 2477 roads on federal land that BLM has closed to motorized vehicles. As members of the public, they are not entitled to that remedy, and because they "cannot state a claim under the Quiet Title Act, [they have] no other recourse against the United States." Id. If Plaintiffs have no other recourse, how can this court redress their injury?

To satisfy the redressability requirement, a plaintiff must show that a favorable decision would remedy the injury. But the court cannot redress the injury if it does not have authority to provide the requested relief. Baca v. King, 92 F.3d 1031, 1037 (10th Cir. 1996) (holding that requested relief was beyond the court's authority to give and, consequently, plaintiff did not have standing). See also, e.g., Buscemi v. Bell, 964 F.3d 252, 259 (4th Cir. 2020) (if court is powerless to provide the requested relief, the plaintiff lacks Article III standing because the court cannot redress the injury); Juliana v. United States, 947 F.3d 1159, 1170 (9th Cir. 2020) ("To establish Article III redressability, the plaintiffs must show that the relief they seek is … within the district court's power to award."); Swan v. Clinton, 100 F.3d 973, 976 (D.C. Cir. 1996) (plaintiff does not have standing when the court lacks power to redress that injury); Love v. Vilsack, 908 F. Supp. 2d 139, 145 (D.D.C. 2012) (to establish redressability, a plaintiff must show "that the court is capable of granting the relief sought").

In this context, the court does not have authority to re-open the areas BLM has closed to motor vehicles. The court's power (i.e., its jurisdiction) lies in the QTA, and Plaintiffs do not allege facts that would give them standing to bring such a cause of action. The fact that Plaintiffs' constitutional claims are one step removed from a QTA claim does not expand the court's jurisdiction. Accordingly, the court dismisses their remaining claims. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## ORDER

For the foregoing reasons, the court grants Defendants' Motion for Judgment on the Pleadings (ECF No. 39) and dismisses the case.

DATED this 22nd day of July, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge